Ashburn, J.
Plaintiffs prosecute this action to recover from defendant an assessment on his lot in Cincinnati, for grading and paving Front street, from the old corporation line to the eást line of the city of Cincinnati. They own the claim in part as contractors, and in part by assignment to them from Bonte & Jones.
The questions in the case ai’ise upon that portion of the amended answer, which is as follows: “ The said defendant, without waiving any part of his answer heretofore filed, but insisting on the same, now comes and denies that the ordinance described in the petition was duly passed, and alleges that, on the contrary, said ordinance was not passed by the city council of the city of Cincinnati, in the terms described in the petition, nor was any ordinance upon the subject passed, upon the' recommendation and report, or either of them, of the board of city improvements of the *315 city of Cincinnati. Eor which reason the defendant alleges that the ordinance as actually passed by the city council of the city of Cincinnati is not binding upon the defendant.”
To this answer there wras no reply. But we understand counsel for defendant, by his remarks in his brief, as waiving any question that might arise out of a supposed want of reply, and as desiring to have the case disposed of on its merits.
Counsel make and discuss the following questions :
1. As the law was in 1861, were the recommendation and report of the hoard of city improvements conditions precedent to the power of the city council to charge the costs of improvement upon the property of defendant.
2. Might such report and recommendation he proved by parol.
3. Should the report and recommendation, upon the admission of the parol testimony, have been established in this case.
It is claimed by defendant, that the city, council had no power to pass the ordinance for the improvement, except upon the recommendation and report of the hoard of city improvements, and these must he shown by the records of the hoard; and it is further claimed that-no such recommendation and report were ever made by said board.
The questions involved in this case are not free from serious difficulty. They arise on exceptions to testimony and on overruling a motion for a new trial. In order to have a reasonably clear understanding in regard to them, it will he necessary to group together the facts and circumstances that boar upon them, as contained in the record ; a!?'- .'o give proper consideration to the natural and necessary presumptions that arise out of the proofs. The testimony- to he considered consists of a transcript of the proceedings of the hoard of city improvements, copies of some proceedings of the city council, some ordinances, and the testimony of Iliqrsted, if admissible. To the testimony of Kiersted, offered by the plaintiff,'defendant excepted.
*316 The following is the transcript of the “ minutes” of the board of city improvements:
“ Office of Board of City Improvements,
“ City Buildings, Cincinnati, January 8, 1861. j
“At a joint session of the board of city improvements and committee of public improvements of the city council, held this day, in attendance, John Horton, Frederick Stagge, Jeremiah Kiersted, city commissioners, and A. W. Gilbert, city civil engineer, committee of public improvements of the city council. Present, J. M. Noble, chairman.
“ In the absence of the president, Mr. Kiersted was called to the chair, when the following papers referred to the joint board were taken up, and thus disposed of:
“ The petition of Lewis Glenn and other property holders on East Front street, in the Seventeenth ward, asking to have said street, graded and paved with bowlder stone. On motion, the prayer of the petitioners was granted. And,
“ On motion of Mr. Kiersted, the clerk was instructed to prepare and transmit to the city council an ordinance to grade and pave with bowlder stone Front street, from Washington street to the east line of the city of Cincinnati.
“The joint session then closed, and the board of city improvements proceeded to regular business. The minutes of the preceding meeting were road and approved.”
The J. M. Noble who is represented as being present at this meeting was chairman of the committee on public improvements appointed by the city council. There is no evidence, written or verbal, that he took any part in the proceedings of the meeting. He was not a member of the board of city improvements. The members of that body •were all present but the mayor, and are named in the record. As he had no legal right to vote on questions pertaining to the duties of the board, the presumption of the law is that he did no more than his duty, and took no part in the official transactions of the boai’d. The meeting is called a joint session of the board of city improvements and committee on public improvements of the city *317 council. The record bears internal .evidence that it was not a joint session. All the members of the board were present but the mayor; and J. M. Noble, chairman of the committee on public improvements of the city council, was present, and none others. Calling the meeting a joint session was a mistake.
In July, 1857, to facilitate the transaction of business between the two bodies, the city council adopted this rule:
“Resolved, That the board of city improvements be requested to present to the several standing committees of city council such recommendations, reports, or ordinances as may pertain to the’ respective work or subject for which we have a standing committee of this board.”
In view of this rule, it is a more reasonable presumption that Mr. Noble, being advised of the business before the board, was present to receive any report and recommendation the board might desire to send to the city council. This presumption is in harmony with the above rule and his duties as chairman of the council committee on public improvements. To hold that he took an active part by voting in the board meeting would be charging him with a violation of official duty and obligation. It is safer to indulge the presumption that a record not sanctioned by the statute was irregularly kept. That his presence at the meeting of the board was for a proper purpose is further shown by what took place in the city council next day, January 9. Among the proceedings of council of that date is this record :
“Also, Mr.'Noble, from the committee oii public improvements, presented the following ordinances:
“An ordinance to grade and pave with bowlder stones Front street from Washington street to the east line of the city of Cincinnati.
“ Which were severally twice read, laid on the table, and the clerk instructed to give four weeks’ notice of the pendency of the same.”
Noble was, in this, not a member of, but a messenger *318 from the board to the council. No further action was had iu relation to the improvement, until March 13, when the city council took the following action :
“ Council Chamber, March 13,18G1.
“ On motion, an ordinance entitled ‘An ordinance to grade and pave with bowlder stone Front street from Washington street to the east line of the city of Cincinnati/
“ Was taken from the table and again read.
“Mr. Hirst moved to amend by striking out ‘ Washington street/ and inserting ‘ old corporation line/
“ Which was agreed to.
“ Mr. Davis 'moved to amend by striking out, after the word ‘ gravel/ the words £ eight inches/ and inserting ‘ sixteen inches.’
“ Mr. Snodgrass moved to .amend by inserting ‘ twelve inches/ which was decided in the affirmative.
“ The ordinance was then ordered to be engrossed for final passage this day, by the following vote :
“ Said ordinance being engrossed, was finally passed by the following vote.”
In addition to the foregoing, there was in evidence a copy of the ordinance and the action had thereunder by the city council, including the assessment made upon the defendant’s real estate. We find then established by record, proof, that a petition of Lewis Glenn and oth.ers reached the board of city improvements praying to have a certain street graded and paved ; that the prayer of the petitioners was granted by that board ; that the clerk of that board was by the board instructed to prepare and transmit to the city council an ordinance to “grade and pave the said street;” that J. M. Noble, chairman of the committee on public improvements of the city council, was present; that Noble was the proper person to receive and carry the recommendation and report of the board to the city council; that on the next day he reported the action and recommendation of the board to the city'council by and through *319 an ordinance providing for the improvement of said street; that council passed the ordinance in due time, and took such action from time to time as was necessary. From these proven facts we are authorized to infer as a fact that a recommendation of the board of city improvements was for this work made at a regular meeting of the board, and that such recommendation was reported to the city council in sufficient form, thereby making a prima facie case in favor of the jurisdiction of the city council over the subject-matter. This being the effect of the record evidence, the burden of proof is shifted upon the defendant to make manifest a want of j urisdiction.
In support of this view is the holding in the case of the Lessee of J. J. Combs and T. Ewing, Jr. v. John Lane, 4 Ohio St. 112, in which it was held that “in respect to official acts the law will presume all to have been rightfully done, unless the circumstances of the case overturn this presumption ; and, consequently, acts done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter. Eacts presumed are as effectually established as facts proven, so long as the presumption remains unrebutted.” Also 2 Ohio St. 246; Bank of the U. S. v. Dandridge, 12 Wheat. 70; 7 Ohio (pt. 2), 190; Williams v. East India Co., 3 East. 192; Johnson v. Stedman, 3 Ohio, 97; 5 Blackf. 390; 1 Greenl., sec. 34, p, 38. One fact to be ascertained is, Did the board of city improvements agree to recommend the grading and paving? A second fact to find is, Did a knowledge of such recommendation by the board, with the consent of the board, reach the city council through its chairman of the committee on public improvement's ? and 3. Did the city council recognize and act upon the recommendation of the board to grade and gravel the street? These essential facts being shown to exist, the city council had jurisdiction to order the improvement made under sec. 105 (S. & 0. 1526).
The manner in which the recommendation was reported to the city council is of secondary consideration. The fact that the board had a clerk who kept in a book a minute of *320 tbe action of tbe board, gives no intrinsic value to the record as evidence, unless su'ch record is authorized by the statute. Prior to the enactment of the municipal code, in 1869 (66 Ohio L. 233), the statute did not give this board a clerk, nor require, as the act of 1869 does, “ a complete journal of all its proceedings” to be kept; did not x-equire any record to be kept. Doubtless the city council might, to facilitate business and dignify the body, give it a clerk to keep a “minute” of its proceedings. Such a record could have no binding foi’ce, nor constitute the only source from which information might be derived.
While the law looks kindly upon such records, it will inquire what authority the law intended them to have, and when they concern the public acts of inferior bodies will underlie them with many favoi'able presumptions. In the case of Downing v. Ruger, 21 Wend. 178, iu speaking of the official acts of overseers of the poor, it was held: “ So strung is the presumption in favor of the performance of official duty, that it always prevails, unless it be shown to be otherwise by direct and positive proof, coining from the mouths of witnesses whose relation to the transaction enables them to put a direct negative upon the presumption.” There is no provision in the statute inquiring the report and recommendation of the board to be in uniting. When a statute inquires an act to be done, and gives no direction as to the mode of performance, and proceedings are had iu the direction of performance, the duty will be pi-esumed to have been rightly performed until the contrary is made to appear.
This presumption does not arise so strongly in regard to the exercise of power as to the performance of duty under the power. City councils were vested with large grants of legislative power and duties under many other granted powers, and they are seldom found putting restraint upon their actual and implied authority. So that, in cases wdrere restraint is put upon their action by statute, and they can only act upon the authority of a repoi-t and recommendation of another body, it would not be wise; by mere con* *321 struction, to lessen the force of the restraint to presume jurisdiction, simply because of its exercise. But when the question is not of power, but of the manner in which a supposed act was done, the presumption is in favor of the officer having performed his duty in a legal and sufficient manner. In this case, upon the proofs, the presumption in favor of right performance by the board is so forcible as to be almost, if not entirely, conclusive upon the fact of report and recommendation to the council.
Judge Taft forcibly remarks: “ Here is no ground whatever to suppose that this work was not done with the full concurrence of the board of city improvements. It had the consideration of the board, as appears from the minutes, and there is no indication of any dissent on the part of any member. The city council proceeded on that hypothesis. The work was contracted for and all done, and well done, according to the testimony, and the defendant has had the benefit of it.” A fair deduction from the-proofs considered, and an application of the presumptions accorded in courts.of justice toward and in favor of official acts, require the conclusion that the city council was within the bounds of its jurisdiction when it passed the ordinance complained of.
Was parol testimony admissible in this case ? We think it was.
The testimony of Kiersted makes it clear that the improvement was both recommended and reported to the city council in a manner that was usual — upon a slip of paper attached to the ordinance. He says : “ I know the recommendation accompanied the ordinance, for I selected the ordinance out myself, and put it into the hands of Mr. Noble.” This statement of Kiersted is in no sense amenable to objection. They are circumstances that would not properly pass into the minutes of the board, and are proper to-be considered in the case. However, his testimony was all objected to, for the reason that the board had a clerk and kept a record.
*322 By section 61 “ the city council shall possess all the legislative powers granted by this act; ” and, as to legislation, is restricted to the power and jurisdiction granted it over ‘special matters; over some, full power, — over others, none in the first place. To illustrate this: Section 62 provides that the city council may establish a board of health, define the duties, and provide, by election or appointment, all necessary officers. This gives the city council full legislative power over the whole subject-matter.
Section 76 provides for the election, in cities of the first ■class, of three commissioners, who, together with the mayor .and city civil engineer, shall constitute the board of city ■improvements. It is made the duty of the board “ to enforce the ordinances of the city; ” to superintend, among ■other things, “ the improvement” of streets; acting under the supervision of the city council.
Section 105 provides that “ no improvement or repair in ■relation to streets, sewers, or bridges shall be ordered or directed by the city council, except on the report and recommendation of said board.” Thus, in relation to the specified improvements, placing the power of the board above the ■city council. On these specified subjects the city council has no original jurisdiction. The law makes it capable of receiving jurisdiction, and points out the body that can ■confer it. Until the city council has jurisdiction imparted to it by the action of the board of city improvements, it has no legislative power over the subject-matter of improving “ streets, sewers, and bridges.” Concerning such matters and duties of the board as the city council can, by virtue of the powers vested in the council by statute, control and direct, the council might appoint a clerk and define his duties and declare the effect of the records. In cases, however, where its powers are derived from the board of city improvements, no such legislative power exists. The board is charged with the duty of considering whether or not the proposed improvement shall be recommended. If it is not recommended, no report is contemplated.
If the improvement is recommended the board is to *323 report to the city council. The manner and medium are not, nor is either, pointed out by law. And as the whole subject is under its control, it may report to council its recommendation in writing or by parol. The board may make a record of such action or not, at its pleasure.
The board made rules regulating its business, and among others, that “ At the regular meeting of the board the minutes of the preceding meeting shall be read by the clerk, and no objection being made, they shall stand approved;” and that “ The city shall be divided into three districts, known as the northern, middle, and southern districts; .and each of the city commissioners shall attend to any petition, communication, or matter pertaining to his district, unless otherwise ordered, and report to the board, as early •as practicable after receiving the same, the facts, and his views in relation thereunto.”
Kiersted testifies that he was the commissioner for the ■eastern district of the city in 1861, and when this work was done, and says, further, “I know that the.ordinance to grade and pave with bowlder stone originated in the board •of city improvements, and was recommended to the city ■council by the board of city improvements. I was, myself, very particular about it. It was in my district, and I knew it was a work of great magnitude, and I wanted it all correct. The board of city improvements recommended to council the ordinance to establish the grade of East Eront street; and, when that was done, the next step was to recommend an ordinance to grade and pave. The board •of city improvements prepared the ordinance and recommended it to the city council.”
Kiersted was a proper witness. The city council had received information from a source upon which it acted in the premises. Information that satisfied council that the board had recommended the improvement was reported to the council. It was the proper tribunal, prima facie, to determine the sufficiency of the report that had come to it. No law or principle prohibits action when the report of the recommendation is a fact and satisfactory to *324 the city council. A juror, who has returned into court a verdict in writing to sustain his verdict, is a proper witness. On the same principle Kiersted, the commissioner, who voted to recommend the improvement and aided in making the report of the board, may be called upon to sustain the legality of the action of the board and show what that action was.
The manifest purpose of this section 105 was to prevent improvident action on the part of the city council in regard to these specified improvements; to appoint a careful and circumspect body to stand between the citizen and the city council, the property-owner and the tax-gatherer, the contractor and the treasury, which would see that the propei’tyownerwas not injured by the inadvertence or want of information on the part of the council touching the matter of improving streets, sewers, and bridges. Integrity, wisdom, and firmness in this board was wanted rather than a record: so provision was made for the men and not for “ minutes.” To require this body to speak alone and exclusively by and through its record, regular or irregular, would be to place this board of city improvements, by construction, under the control and management of the city council, when by the statute the board was placed above the city council.
“ The fact, whether a constable’s bond -was received or rejected, may be proved by parol, where no written entry is made concerning it.” 5 Ohio, 136. Parol testimony was offered to show that the constable’s bond had been disapproved and rejected; and this testimony was rejected. On page 139, Hitchcock, J., says : “ The Court of Common Pleas reject this evidence upon the principle that the official acts of the trustees must be proved by the record of the township alone. "We do nbt believe that these records are of that absolute verity, that any person shall be estopped to show the truth in consequence of any matter which they contain.” Also, 12 Whart. 64. On page 69, the court says : “ We do not admit, as a general proposition, that the acts of a corporation are invalid merely from an omission to have them reduced to writing, unless the statute creat *325 ing it makes suck writing indispensible as evidence, or to gi ve them obligatory force.”
Considering the whole case aud the questions involved, we are of opinion that city councils of the first class, having a board of city improvements, have no power, under section 105 of the “ act to provide for the organization of cities and incorporated villages ” (S. & C. ,1526), to order the improvement of a street by grading and paving, except upon the report and recommendation of the hoard; that the report and recommendation of the board being conditions precedent to the jurisdiction of the city council, that body could not, under that act, so prescribe the duties of the clerk of said hoard as to make the minutes of the proceedings kept by him the sole and exclusive evidence of the transactions of the board of city improvements.
Where it appears, by the proceedings of the city council, ■that a report and recommendation of the board of city improvements had been made to it, and that thereupon the city council proceeded to make the improvement so recommended, it will be presumed, until the contrary is shown, that such report and recommendation of the board of city improvements was properly made.
After the city council has, by the necessary action of the board of city improvements, had jurisdiction conferred upon it to order a street improvement under said act, the ■city council may take such action as is necessary to cause the improvement to be made, and to pay the costs thereof.
Judgment of the Superior Court of Cincinnati in general ■-term reversed, and the j udgment of that court at special term affirmed, and the action remanded for further proceedings.
Scott, Chief Judge, Day, Wright, and Johnson, JJ., concurred.